La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
Este caso nos brinda la oportunidad de analizar el sistema de imposición de penas del Código Penal de 1974 de acuerdo con la interpretación que del derecho a juicio por jurado cobijado por la Enmienda Sexta de la Constitución de Estados Unidos ha realizado el Tribunal Supremo de Estados Unidos. Veamos los hechos que originan esta controversia.
*64 I
El 29 de noviembre de 2003 el Sr. Jaime Santana Vélez (señor Santana Vélez) atropelló y causó la muerte al Sr. Atilano Vázquez Santiago de 83 años de edad. Se le celebró juicio por jurado y fue encontrado culpable del delito de homicidio involuntario codificado en el Artículo 86 del Código Penal de 1974. Véase 33 L.P.R.A. see. 4005 (derogado). A pesar de que el delito de homicidio involuntario al amparo del Código Penal de 1974 tiene una pena fija de un año de reclusión en ausencia de atenuantes o agravantes, el Tribunal lo sentenció a una pena de tres años de reclusión al amparo del privilegio de sentencia suspendida y una multa de $5,000. El foro de instancia no celebró vista para la presentación de prueba sobre agravantes ni realizó determinación alguna con relación a éstos en la sentencia.
El Tribunal de Apelaciones confirmó la sentencia apelada. Concluyó que se probaron al menos dos agravantes durante el juicio. El foro intermedio, a base de la exposición narrativa de la prueba, entendió que el acusado indujo a perjurio a una de las testigos de cargo al comunicarse telefónicamente con ésta en tres ocasiones, previo a la celebración del juicio. Por otro lado, dicho foro consideró que la exagerada velocidad a la que se probó que el peticionario conducía, equivalía a una negligencia crasa. Ambos hechos constituían circunstancias agravantes que, según el foro intermedio, validaban la sentencia impuesta.
El señor Santana Vélez acudió ante este Tribunal arguyendo que la sentencia impuesta está reñida con su derecho a juicio por jurado y con lo resuelto por el Tribunal Supremo de Estados Unidos en Apprendi v. New Jersey, 530 U.S. 466 (2000), y su jurisprudencia interpretativa, debido a que un jurado no determinó los agravantes de la pena más allá de duda razonable.
*65 II
La Enmienda Sexta de la Constitución de Estados Unidos garantiza que en todo proceso criminal el acusado disfrutará del derecho a un juicio rápido y público por un jurado imparcial del estado y distrito donde se haya cometido el delito. Véase Enmda. VI, Const. EE.UU., L.P.R.A., Tomo 1. Igual garantía ofrece la Constitución del Estado Libre Asociado de Puerto Rico en su Artículo II, Sección 11. Véase Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. El derecho a juicio por jurado de la Enmienda Sexta es un derecho fundamental que aplica a los estados a través de la cláusula del debido proceso de ley de la Enmienda Decimocuarta y, por lo tanto, a Puerto Rico.(1) Véanse: Duncan v. Louisiana, 391 U.S. 145 (1968); Pueblo v. Laureano, 115 D.P.R. 447, 449 esc. 6 (1984); Pueblo v. Martínez Torres, 116 D.P.R. 793, 801 esc. 14 (1986).
La función esencial del Jurado es adjudicar los hechos correspondientes del caso ante su consideración a base de la evaluación de la prueba presentada y recibida en el juicio. Regla 111 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. II, Sec. 15.4, pág. 319. Luego de determinados los hechos y en conformidad con las instrucciones del juez, el jurado aplica el derecho y emite el veredicto que corresponda, siendo quien decide la cuestión última de culpabili *66 dad o inocencia del acusado. íd., pág. 320; 6 La Fave, Israel, King & Kerr, Criminal Procedure Sec. 22.1(a), pág. 5 (2007).
Si bien el veredicto del Jurado representa la decisión de ese cuerpo sobre la responsabilidad criminal del acusado, la adjudicación de la pena, en caso de veredicto de culpabilidad, le corresponde al juez pues el derecho a juicio por jurado no se extiende a dicha etapa. Véase Spaziano v. Florida, 468 U.S. 447 (1984). Véase, también, O.E. Resumil de Sanfilippo, Derecho Procesal Penal, Hato Rey, Equity de Puerto Rico, 1990, T. 1, See. 5.3, pág. 68. El Tribunal Supremo de Estados Unidos, sin embargo, en una serie de casos comenzó a cuestionar los esquemas de sentencias establecidos por los estados de acuerdo con las exigencias del debido proceso de ley, del derecho a juicio por jurado cobijado por la Enmienda Sexta y del quantum de prueba requerido para determinar factores agravantes de la pena más allá del máximo permitido por ley.(2)
Así pues, en Apprendi v. New Jersey el Tribunal Supremo resolvió que cualquier hecho que agrave la pena de un delito más allá del máximo estatutario, salvo aquellos hechos relacionados con la reincidencia, tiene que ser determinado por el jurado más allá de duda razonable o ser aceptado por el acusado (“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt”). Id., pág. 490. Indicó el Tribunal en esa ocasión que históri *67 camente ha existido tina conexión entre el veredicto de los jurados y la sentencia determinada por los jueces, por lo que la pena impuesta al acusado tiene que corresponder a todos los hechos determinados por el Jurado más allá de duda razonable.
De esta manera, para propósitos del derecho a juicio por jurado, el Tribunal estableció que cualquier hecho que agrave la pena más allá del máximo estatutario, excepto aquellos relacionados con la reincidencia, debe ser determinado por el jurado más allá de duda razonable, sin hacer distinción entre si los hechos agravantes de la pena son elementos del delito (“elements of the offense”) o factores agravantes (“sentencing factors”).
En Apprendi, el acusado se declaró culpable de tres delitos graves —dos cargos de segundo grado por posesión ilegal de armas que conllevaban una pena de 5 a 10 años de reclusión cada uno y otro de tercer grado por la posesión de explosivos que conllevaba una pena de 3 a 5 años de reclusión— por realizar disparos en contra de la residencia de una familia afroamericana. íd., págs. 469-470. Según el acuerdo con Fiscalía, las penas correspondientes a los car-gos de posesión ilegal de armas se cumplirían consecutivamente entre sí, pero concurrentes con la pena por la posesión ilegal de explosivos. íd., pág. 470. De esta manera, Apprendi se enfrentaba a una pena máxima agregada de 20 años. No obstante, la pena de uno de los cargos por posesión ilegal de armas podía ser agravada hasta 20 años de reclusión si el juez determinaba, por preponderancia de la prueba, que el delito se cometió con el propósito de intimidar por razón de raza, color, género, incapacidad, religión, orientación sexual u origen étnico. Con la pena agravada en ese delito, Apprendi se exponía a una pena máxima agregada de 30 años.
En el acuerdo, la Fiscalía se reservó la prerrogativa de solicitar la pena agravada y Apprendi el derecho de impugnarla por considerarla inconstitucional. Luego de la cele *68 bración de una vista y la presentación de prueba por parte de la Fiscalía, el juez determinó como cuestión de hecho, que existía base para la pena agravada, por lo que impuso una pena de 12 años en ese delito, mayor al límite de 10 años que establecía la ley. Apprendi v. New Jersey, supra, pág. 471. El Tribunal Supremo anunció la norma que transcribimos anteriormente y declaró inconstitucional la sentencia impuesta, pues el estatuto en contra de los crímenes de odio permitía que el juez impusiera una pena mayor a la que se hubiese impuesto con el sólo veredicto de culpabilidad del Jurado. Id., págs. 482—483.
Esta norma ha sido consecuentemente reiterada por el Tribunal Supremo de Estados Unidos. En Blakely v. Washington, 542 U.S. 296 (2004), el Tribunal revocó una sentencia de 90 meses impuesta por un juez por el delito de secuestro por estar reñida con la norma de Apprendi. En esa ocasión, el delito en particular tenía un intervalo de pena de 49 a 53 meses. Dicha pena podía ser agravada si el juez encontraba “substantial and compelling reasons justifying an exceptional sentence”. Blakely v. Washington, supra, pág. 299. El estado de Washington argüyó que el delito de secuestro era clasificado como un delito grave B (“class B felony”) para los cuales, por estatuto, se establecía que tendrían una pena no mayor de 10 años. De esta manera, argüyeron que no había problema constitucional con Apprendi ya que la pena impuesta estaba dentro del límite estatutario. Id., pág. 303. El Tribunal descartó este argumento indicando que:
[T]he “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. ... In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,” ... and the judge exceeds his proper authority. (Enfasis en el original.) Blakely v. Washington, supra, págs. 303-304.
*69 Así pues, el Tribunal aclaró en ese caso que el máximo estatutario no es aquella pena máxima que podría imponerse al considerar hechos agravantes de la pena, sino la pena máxima que el juez puede imponer con el sólo veredicto de culpabilidad del jurado, sin tener que realizar determinaciones adicionales.
Esta norma fue extendida al ámbito federal en United States v. Booker, 543 U.S. 220 (2005). En dicha ocasión, el Tribunal Supremo indicó que las guías federales de imposición de penas (“Federal Sentencing Guidelines”), las cuales regían la discreción de los jueces de distrito federales al imponer penas, eran inconstitucionales tal y como fueron aprobadas por el Congreso, por permitir que dichos jueces determinaran por preponderancia de la prueba circunstancias agravantes de la pena en ausencia del jurado. Según el Tribunal, el sistema de los “guidelines” y el sistema declarado inconstitucional en Blakely eran similares, pues en ambos sistemas los jueces estaban obligados a imponer una pena establecida en un intervalo y estaban incapacitados de imponer una sentencia mayor de no encontrar circunstancias agravantes.
El Tribunal Supremo, no obstante, salvó la constitucionalidad de las guías al hacerlas discrecionales y no mandatorias, estableciendo un sistema de discreción total a los jueces de distrito federales en relación con la imposición de penas, sujeta a una revisión en apelación bajo el estándar de razonabilidad (“reasonableness”).(3) Booker, supra, pág. 261. En la medida en que dicho sistema permite que el juez imponga cualquier pena dentro de un intervalo, independientemente de la determinación de agravantes o atenuantes, éste no tiene problemas constitucionales con Apprendi, pues el juez no necesita determinar hechos por sí mismo *70 para agravar la pena, sino que actúa dentro de la órbita de poder que un veredicto de culpabilidad le concede.
Hace apenas dos años, en Cunningham v. California, 549 U.S. 270 (2007), el Tribunal Supremo reiteró la norma de Apprendi, Blakely y Booker. En dicho caso, el Estado de California tenía un sistema de imposición de penas en el cual, en ausencia de que el juez encontrara agravantes o atenuantes, éste estaba obligado a imponer la pena fija intermedia. En el caso en cuestión, la pena fija intermedia era de 12 años, de mediar circunstancias atenuantes la pena fija era de 6 años y de mediar circunstancias agravantes la pena fija era de 16 años. El juez, al encontrar seis circunstancias agravantes y una atenuante, impuso la pena máxima de 16 años. El Tribunal Supremo revocó dicha sentencia. Indicó que dicho sistema contravenía la norma de Apprendi, Blakely y Booker, por ser el juez y no el jurado el que encontraba los hechos que podían agravar la pena más allá del límite estatutario.
El Tribunal descartó varios argumentos esbozados por el Tribunal Supremo de California, el cual había validado dicho sistema. California argüyó que el límite estatutario era el límite superior del intervalo, ya que el sistema de imposición de penas establecido simplemente autorizaba a los jueces a tomar en cuenta hechos que tradicionalmente eran incidentales a la determinación de una sentencia apropiada en un intervalo determinado. Cunningham v. California, supra, pág. 289. En ese sentido, California comparó su sistema al sistema federal post-Booker. Id., pág. 291.
El Tribunal Supremo indicó que la ley de California establecía que los jueces debían (“shall”) imponer el término intermedio como sentencia, en ausencia de agravantes o atenuantes, por lo que los jueces no tenían discreción para imponer cualquier pena dentro de un intervalo, sino que estaban obligados a imponer la pena fija intermedia establecida. Cunningham v. California, supra, pág. 292. El *71 sistema, por lo tanto, no era comparable al sistema federal post -Booker en el cual los jueces tienen total discreción al momento de imponer penas, independientemente de la determinación de agravantes o atenuantes. Por otro lado, el Tribunal esbozó que la constitucionalidad del sistema adoptado a la luz de Apprendi, Blakely y Booker no dependía de lo que California podía considerar como hechos que tradicionalmente los jueces determinaban en la imposición de penas, sino que la norma seguía siendo que todo hecho que agrave la pena de un delito más allá del límite estatutario, salvo aquellos relacionados con la reincidencia, tiene que ser determinado por un jurado y probado más allá de duda razonable.
Por último, el Tribunal ofreció dos alternativas a California y a los demás estados para mantener un sistema de sentencias determinadas que no violaran la Enmienda Sexta: (1) establecer un sistema en el cual los jurados durante el juicio, o luego del veredicto de culpabilidad, determinen los agravantes de la persona convicta, o (2) establecer un sistema de genuina discreción al juez, en el cual éste pueda imponer cualquier pena que entienda pertinente dentro de un intervalo determinado, utilizando las circunstancias atenuantes y agravantes como meras guías de su discreción.
Así pues, es clara la norma de Apprendi y su jurisprudencia interpretativa según esbozada por el Tribunal Supremo de Estados Unidos. Cualquier hecho que agrave la pena de un acusado más allá del límite estatutario, salvo aquellos hechos relacionados con la reincidencia, debe ser determinado por un jurado más allá de duda razonable. El límite estatutario es aquella pena máxima que el juez puede imponer con el sólo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales. Ante sistemas de sentencias determinadas, existen dos vías para cumplir con la norma: (1) que sea un jurado, du *72 rante el juicio o con posterioridad a éste, el que encuentre las circunstancias agravantes de la pena más allá de duda razonable o (2) establecer un sistema de genuina discreción al juez en el cual éste tenga la autoridad para establecer cualquier pena dentro de un intervalo, independientemente de la determinación de agravantes y atenuantes, utilizando éstos como meras guías de su discreción.
Debemos analizar el sistema de imposición de penas establecido al amparo del Código Penal de 1974 para auscultar su validez de acuerdo con la normativa establecida por el Tribunal Supremo de Estados Unidos. Veamos.
III
A diferencia del Código Penal de 2004 en el cual las penas correspondientes a los delitos están determinadas por el grado del mismo, el Código Penal de 1974 establece una pena fija particular para cada delito, la cual puede variar dependiendo de la existencia de atenuantes o agravantes. Así, el delito de homicidio involuntario codificado en dicho Código, en su parte pertinente, expresa:
Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un día. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida, o ambas penas. (Énfasis nuestro.) Art. 86 del Código Penal de 1974 (33 L.P.R.A. see. 4005 (ed. 1983)).
De la lectura de dicho artículo, surge que el delito de homicidio involuntario, cuando es causado al conducir un vehículo de motor, conlleva una pena fija de un año. Para que un juez pueda imponer una pena mayor o menor a la pena fija de un año, es necesario que se determinen circunstancias agravantes o atenuantes. Con el sólo vere *73 dicto de culpabilidad del Jurado, el juez sólo puede imponer la pena fija establecida. Por lo tanto, el límite estatutario según Apprendi y Cunningham es el término fijo establecido de un año. Nótese que el juez no tiene discreción para establecer otra pena, si no es mediante la determinación de hechos adicionales al veredicto del jurado, pues el artículo en cuestión establece que “se le impondrá pena de reclusión por un término fijo de un año”. El artículo no establece que el juez podrá imponer, sino que ordena que se le imponga dicha pena fija, limitando la discreción de éste en ese ejercicio. En ese sentido, el texto de la ley es impositivo, no permisivo, por lo que el juez está obligado a imponer la pena fija, en ausencia de atenuantes o agravantes.
El límite a la discreción del juez en la imposición de penas lo impone el propio Código Penal de 1974 en su Parte General. Así, el Artículo 58 de ese cuerpo de ley establece:
Cuando el tribunal condenare a pena de reclusión dictará una sentencia determinada que tendrá término específico de duración. En los casos de delito grave se impondrá el término fijo establecido por ley para el delito. De existir circunstancias agravantes o atenuantes, deberá aumentar o disminuir la pena fija dentro de los límites establecidos en la ley para el delito. En estos casos el término de reclusión a imponerse también será fijo. (Énfasis nuestro.) Art. 58 del Código Penal de 1974 (33 L.P.R.A. sec. 3282).
Según dicho artículo, los jueces al momento de imponer sentencia están limitados a aplicar la pena fija establecida en los delitos graves, en ausencia de atenuantes y agravantes. La determinación de la existencia de circunstancias agravantes o atenuantes es la llave que permite a los jueces desviarse de la pena fija establecida y le concede discreción para imponer cualquier pena que entiendan pertinente, dentro de los límites que el propio delito establece. Sin dicha determinación, no obstante, el juez está impe *74 dido de imponer una pena mayor o menor de la fija establecida.(4)
Al examinar la intención legislativa del artículo 58 del Código Penal de 1974, encontramos que ésta apoya la interpretación que realizamos de su texto. Dicho artículo es producto de la Ley de Sentencias Determinadas, Ley Núm. 100 de junio 4 de 1980 (34 L.P.R.A. see. 1044). Según la Exposición de Motivos de la referida ley, la antigua Ley de Sentencias Indeterminadas propiciaba “la disparidad en las sentencias y no ofre[cía] certeza en cuanto a las penas a imponerse por los delitos cometidos”. Por lo tanto, la Ley de Sentencias Determinadas tenía el propósito de que las sentencias tuvieran “un mayor grado de certeza para que operen como factor disuasivo de futura conducta criminal por parte de los delincuentes potenciales y propicien uniformidad de manera que cada delito se castigue de acuerdo con su gravedad”. Exposición de Motivos de la Ley Núm. 100 de 4 de jimio de 1980 (1980 Leyes de Puerto Rico 297).
De manera que uno de los propósitos de la aprobación de la Ley de Sentencias Determinadas, además de proveer certeza en las sentencias impuestas, fue el limitar la discreción de los jueces al aplicar las penas establecidas. El antiguo sistema de sentencias indeterminadas propiciaba la disparidad, ya que ante hechos similares, distintos jueces aplicaban penas dispares, por lo que la administración de la justicia variaba intolerablemente de juez a juez. Así pues, la Ley de Sentencias Determinadas vino a atender dicha anomalía, estableciendo penas fijas para cada uno de *75 los delitos graves, limitando así la discreción de los jueces de instancia.
Por lo tanto, el texto del Artículo 58 del Código Penal, supra, la letra de cada uno de los delitos graves estatuidos en dicho Código, y la intención legislativa de la Ley de Sentencias Determinadas apoyan la conclusión de que los jueces de instancia al amparo del sistema del Código Penal de 1974 carecen de discreción para imponer cualquier pena dentro del intervalo establecido en cada delito.
Al analizar el sistema de imposición de penas del Código Penal de 1974 de acuerdo con la jurisprudencia federal antes discutida, debemos concluir que nuestro sistema no es tan distinto al sistema establecido por California, el cual fue declarado inconstitucional, en su aplicación, en Cunningham. Cierto es que aquel sistema, distinto al nuestro, es de triadas, es decir, que son posibles sólo tres sentencias: la intermedia, la mínima o la máxima. Sin embargo, lo determinante para el análisis de Apprendi no es si el sistema es de triadas o no, sino precisar si el juez tiene discreción para imponer cualquier pena a través del intervalo o está obligado a imponer la pena fija establecida para el delito, en ausencia de atenuantes o agravantes. En California, al igual que en Puerto Rico, el juez está obligado a imponer la pena fija intermedia, salvo que haga una determinación de atenuantes o agravantes. Apprendi y los casos subsiguientes aplican para prohibir que sea el juez quien agrave la pena más allá del límite estatutario al determinar por sí mismo los agravantes, sino que obliga a que éstos sean determinados por el jurado más allá de duda razonable.
Aceptada la limitada discreción de nuestros jueces en la imposición de penas bajo el Código Penal de 1974, debemos determinar la solución adecuada para nuestro sistema, tomando en consideración las dos vías que el Tribunal Supremo ofreció a los estados en Cunningham para cumplir *76 con la norma de Apprendi y poder considerar agravantes al momento de imponer la pena correspondiente en casos ventilados ante un jurado. De acuerdo con el texto del Código Penal de 1974 y de la intención legislativa de la Ley de Sentencias Determinadas, la creación de un sistema de imposición de penas en el cual el juez tenga total discreción para imponer la pena que entienda correspondiente, independientemente de la determinación de agravantes o atenuantes, es tarea de la Asamblea Legislativa y no le corresponde a este Tribunal. Interpretar que el Artículo 58 del Código Penal de 1974 y el texto de cada uno de los delitos que establecen penas fijas le conceden discreción total a los jueces para imponer cualquier pena a través del intervalo, no sólo vulneraría el claro texto de la ley, sino que desvirtuaría también la intención legislativa plasmada en la Ex-posición de Motivos de la Ley de Sentencias Determinadas. Dicha interpretación, además, sería un claro acto de legislación judicial en violación a los más fundamentales preceptos de nuestra Constitución y la doctrina de separación de poderes que ésta promulga.
De modo que la única solución que podemos adoptar cónsona con el sistema de sentencia determinada del Código Penal de 1974 y con el derecho a juicio por jurado garantizado por la Enmienda Sexta es someter los agravantes al jurado y que éstos sean probados más allá de duda razonable. Por lo antes expuesto, resolvemos que en casos celebrados ante jurado al amparo de las disposiciones del Código Penal de 1974, los agravantes de la pena deben ser sometidos ante esa institución y ser probados más allá de duda razonable, salvo que sean aceptados por el acusado.(5) La solución que acogemos mantiene la esencia de nuestro *77 sistema de imposición de penas de conceder una limitada discreción a los jueces de instancia al dictar sentencia, respetando igualmente el derecho a juicio por jurado de los acusados.(6)
Las Reglas de Procedimiento Criminal vigentes no contemplan la norma que hoy adoptamos, pero tampoco la impiden. Es nuestra función establecer el procedimiento que deberá seguirse en casos ventilados ante jurado. En casos en que los agravantes surjan de la prueba admisible presentada, el Ministerio Público podrá solicitar al Tribunal que éstos se le sometan al jurado en conjunto con la determinación de culpabilidad o inocencia. En caso de que el jurado emita un veredicto de culpabilidad, deberá determinar igualmente si encontró probados más allá de duda razonable los agravantes imputados.(7)
Por el contrario, si es necesario presentar prueba adicional a la requerida para establecer la comisión del delito que no sería admisible durante el juicio o si el juez considera que se le causaría un peijuicio indebido al acusado al someter los agravantes antes de rendirse el veredicto, entonces el procedimiento a seguir será similar al que se lleva a cabo actualmente al amparo de las Reglas de Procedimiento Criminal. Según las Reglas 162.4 y 171 de Procedimiento Criminal tanto el acusado como el fiscal podrán solicitar del tribunal que escuche prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena. Véanse las Reglas 162.4 y 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El Ministerio Público podrá ha *78 cer uso de las vistas que conceden dichas reglas para presentar prueba sobre los agravantes que estime pertinentes imputar. El Jurado, en esos casos, no sería disuelto inmediatamente luego de emitirse el veredicto, sino que tendrían que realizar la determinación de los agravantes más allá de duda razonable a base de la prueba desfilada en el juicio o a base de prueba adicional que el Ministerio Público presente en dicha vista. De los agravantes no ser probados más allá de duda razonable por el Jurado, el juez estará obligado a imponer la pena fija, salvo que considere probadas circunstancias atenuantes que le permitan con-ceder una pena menor.(8)
Por último, debe recordarse que por ser la norma que establecemos en este momento de carácter constitucional aplicable a los procesos penales, tiene efecto retroactivo a todos aquellos casos que no hayan advenido finales y fir-mes al día de hoy. Pueblo v. González Cardona, 153 D.P.R. 765, 772 (2001); Griffith v. Kentucky, 479 U.S. 314 (1987). En casos en los cuales el convicto alegue que su sentencia es inconstitucional de acuerdo con la norma adoptada, y así sea determinado por el tribunal, éste deberá ser resentenciado al término fijo que establezca el delito correspondiente. De ser el interés del Ministerio Público en el proceso de resentencia que se imponga una pena con agravantes, será necesario que el foro de instancia celebre *79 una vista para estos fines ante un jurado, y que éstos sean probados más allá de duda razonable.(9)
IV
En este caso, el señor Santana Vélez fue encontrado culpable del delito de homicidio involuntario. Fue sentenciado a una pena de reclusión de tres años, al amparo del beneficio de sentencia suspendida, aun cuando el delito de homicidio involuntario tiene una pena fija de un año. Los agravantes no fueron aceptados por el acusado ni presentados ante el jurado, por lo que dicho cuerpo no hizo determinación alguna con relación a éstos.
La sentencia impuesta al señor Santana Vélez es inconstitucional de acuerdo con la norma adoptada en Apprendi y su jurisprudencia interpretativa. La pena máxima que podía imponer el juez con el sólo veredicto del jurado era la pena fija de un año establecida en el Artículo 86 del Código Penal de 1974, supra. Para imponer una pena mayor a esa, se debieron probar más allá de duda razonable y ante el Jurado las circunstancias agravantes que el Ministerio Público quisiera imputar.
Por los fundamentos antes expresados, procede la revocación de la sentencia dictada por el Tribunal de Apelaciones e igualmente la sentencia impuesta por el foro de instancia. Se ordena la devolución del caso a dicho foro para que se resentencie al señor Santana Vélez de forma compatible con lo expuesto en esta opinión.

Se dictará sentencia de conformidad.

*80 El Juez Asociado Señor Martínez Torres emitió una opinión de conformidad. El Juez Asociado Señor Rivera Pérez emitió una opinión disidente, a la que se unieron la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo.
Opinión de conformidad emitida por el
Juez Asociado Señor Martínez Torres.
El peticionario Jaime Santana Vélez arguye que la sentencia que le fue impuesta viola su derecho a juicio por jurado al amparo de la Sexta Enmienda de la Constitución federal y su jurisprudencia interpretativa: Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker, 543 U.S. 220 (2005); Cunningham v. California, 549 U.S. 270 (2007).
El Tribunal sostiene hoy la constitucionalidad de las Reglas 162.4 y 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, ya que éstas no impiden la intervención del Jurado en la imposición de agravantes, según lo requiere la Sexta Enmienda. Coincido plenamente con el análisis del Tribunal, pero me parece importante resaltar varios aspectos que justifican el dictamen que hoy emitimos.
I
El Tribunal Supremo federal manifestó en Downes v. Bidwell, 182 U.S. 244 (1901), que luego del cambio de soberanía en las postrimerías del Siglo XIX, Puerto Rico no fue incorporado a Estados Unidos, según ese término se utiliza en la Constitución federal. Ese caso fue el inicio de una serie de jurisprudencia federal conocida como los Casos Insulares. En esos casos, el Tribunal Supremo decidió que el Congreso de Estados Unidos, al legislar para Puerto *81 Rico, no tenía las mismas limitaciones que la Constitución federal le impone frente a los estados.
En Balzac v. Porto Rico, 258 U.S. 298 (1922), se expresó que la Ley Orgánica de 2 de marzo de 1917, mejor conocida como Ley Jones, no tuvo el efecto de incorporar a Puerto Rico la cláusula de juicio por jurado de la Sexta Enmienda, Const. EE.UU., L.P.R.A., Tomo 1. Por voz de su Juez Presidente Taft, el Tribunal Supremo expresó sobre las disposiciones constitucionales que “it is just as clearly settled that they do not apply to territory belonging to the United States which has not been incorporated into the Union”. Id., págs. 304-305.
En ese caso se determinó que la Ley Orgánica de Puerto Rico no era suficiente para incorporar a la Isla el derecho a juicio por jurado dispuesto en la Sexta Enmienda, pues ese no fue el propósito del Congreso. Para esa incorporación era necesaria la declaración expresa o una fuerte intención de parte del Congreso. Balzac v. Porto Rico, supra, pág. 306. Además, los Casos Insulares resuelven que sólo los “derechos fundamentales” de la Constitución de Estados Unidos son de aplicación en Puerto Rico. íd., págs. 312-313. Como el derecho ajuicio por jurado en casos criminales no se consideraba fundamental a principios del Siglo XX, no se extendió a Puerto Rico.
Mucho ha transcurrido desde entonces. El 3 de julio de 1950 el Congreso aprobó la Ley Pública Núm. 600, L.P.R.A., Tomo 1, 48 U.S.C.A. sec. 731b et seq. Al amparo de esa ley, el Pueblo de Puerto Rico aprobó la Constitución del Estado Libre Asociado, que entró en vigor el 25 de julio de 1952, luego de recibir la aprobación congresional mediante la Ley Pública Núm. 447, L.P.R.A., Tomo 1, 48 U.S.C.A. sec. 731d n.(1) De ese modo, se estableció una re *82 lación que para aquel entonces era única (“unique”) en el derecho estadounidense, ya que Puerto Rico se convirtió en el primer territorio gobernado por una carta magna redactada por sus propios habitantes. P.R. Consumer Affairs Dept. v. Isla Petroleum, 485 U.S. 495, 499 (1988); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 671-674 (1974).(2)
A partir de entonces, el Tribunal Supremo federal ha sido consistente en reconocer que el propósito congresional tras la Ley Núm. 600 es que se le reconozcan a Puerto Rico la autoridad y facultades internas similares a las de un estado de la Unión. Puerto Rico v. Branstad, 483 U.S. 219, 229-230 (1987); Rodríguez v. Popular Democratic Party, 457 U.S. 1, 8 (1982); Examining Board v. Flores de Otero, 426 U.S. 572, 594 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., supra, pág. 673.
Lo anterior significa, como señaló el decano David M. Helfeld, que Puerto Rico tiene que observar los mismos límites a su autonomía interna que un estado de la Unión.

In the field of individual rights, if a state can do it constitutionally, Puerto Rico can do it, and vice versa. This principle would treat Puerto Rico, by analogy, as equivalent to a state for the purpose of defining the scope of individual constitutional, rights vis-a-vis Puerto Rico governmental actions ....

This principle has been followed equally in reverse: if a state cannot do it constitutionally, neither can Puerto Rico. D.M. Hel *83 feld, Applicability of the United States Constitution and Federal Laws to the Commonwealth of Puerto Rico, 110 F.R.D. 449, 457 (1985).
Ante esa realidad moderna, la pregunta obligada es si Balzac todavía controla la cuestión de la aplicabilidad en Puerto Rico de la cláusula de juicio por jurado de la Sexta Enmienda de la Constitución federal.
En Duncan v. Louisiana, 391 U.S. 145 (1968), el Tribunal Supremo federal expresó que el derecho a juicio por jurado es un derecho fundamental para la concepción americana de justicia. Al clasificar el derecho a un juicio por jurado como fundamental, el Tribunal Supremo federal se apartó de su decisión en Balzac. Tratándose de un derecho reconocido como fundamental, se extiende a los habitantes de Puerto Rico, según la doctrina de los Casos Insulares. Dorr v. United States, 195 U.S. 138, 148 (1904). Véanse, además, Posadas de Puerto Rico Assoc. v. Tourism Co., 478 U.S. 328, 331 esc. 1 (1986); Rodríguez v. Popular Democratic Party, supra, pág. 7; Torres v. Puerto Rico, 442 U.S. 465, 469-470 (1979); Examining Board v. Flores de Otero, supra, pág. 600 esc. 30. Por lo tanto, es ineludible concluir que la cláusula de juicio por jurado de la Sexta Enmienda de la Constitución federal aplica a Puerto Rico. “En cuanto al carácter no fundamental del derecho constitucional federal a juicio por jurado, Balzac probablemente ya no es buena ley.” J.J. Alvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 428. Compatible con esto, en Pueblo v. Laureano, 115 D.P.R. 447, 449 esc. 6 (1984), invocamos a Duncan al resolver que un acusado de cometer ciertas infracciones a la Ley de Armas clasificadas como delitos graves tenía derecho a un juicio por jurado.
Coincido con el decano Helfeld en que no reconocer la aplicación en Puerto Rico del derecho constitucional federal a juicio por jurado en casos criminales “would require a *84 justification, explaining why Puerto Rico could deny a fundamental right which no state can deny”. Helfeld, supra, pág. 458. Insistir en lo resuelto en Balzac luego del precedente de Duncan, resultaría en que los ciudadanos americanos en Puerto Rico tendrían menos derechos fundamentales que los que disfrutarían si estuvieran en cualquiera de los estados de la Unión. Helfeld, supra, pág. 458. Eso chocaría de frente con la disposición de privilegios e inmunidades de la Ley de Relaciones Federales, Art. 2 de la Ley de 2 de marzo de 1917, L.P.R.A., Tomo 1, ed. 2008, 48 U.S.C.A. see. 737.(3)
Sostener la vigencia de Balzac después de Duncan sería negar la igualdad de derechos fundamentales de los ciudadanos americanos en Puerto Rico, lo que sería contrario al propósito congresional de que se trate a Puerto Rico de forma análoga a un estado federado y a nuestro deber constitucional de garantizar la justicia e igualdad a todos, al reafirmar “la lealtad a los postulados de la Constitución Federal”. Preámbulo de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 266.
Establecida la aplicabilidad de la cláusula de juicio por jurado de la Sexta Enmienda, hay que analizar entonces si la actuación judicial que aquí revisamos es compatible con esta garantía constitucional.
II
El Tribunal Supremo de Estados Unidos, en Apprendi v. New Jersey, supra, y su progenie, delimitó la forma en que un estado puede establecer su sistema de imposición de penas sin menoscabar el derecho a un juicio por jurado. *85 Esta jurisprudencia sostiene que con la excepción de una convicción previa, los hechos que incrementen la sentencia sobre el máximo estatutario tienen que ser admitidos por el acusado o probados más allá de duda razonable ante un jurado. La normativa esbozada ha suscitado gran debate al evaluar el impacto de estas decisiones federales en los sistemas penales estatales.
En Apprendi, el acusado se declaró culpable de tres car-gos de segundo grado: dos por poseer un arma de fuego para uso ilegal y otro de explosivos. Un estatuto del estado de New Jersey (la Ley contra Crímenes de Odio) autorizaba extender el término de prisión fijado en ley. Un juez podía hacer esta adición a la pena, por preponderancia de la prueba, si el delito se cometió con el propósito de intimidar por razón de raza, color, género, incapacidad, religión, orientación sexual u origen étnico. Esto es, los hechos que fundamentaban la pena agravada, a saber, la comisión del delito con el propósito de intimidar a estos grupos, podían ser determinados por el juez sin participación del jurado.
En este caso, el juez determinó que los delitos fueron cometidos para intimidar y que éstos fueron motivados por discrimen racial. Ante este hecho, el juez impuso una condena extendida de 12 años. Esa condena conllevaba la determinación de agravantes, pues con la mera convicción por el delito base (utilizar un arma de fuego para uso ilegal) el acusado se exponía a una sentencia de 5 a 10 años (intervalo a ser utilizado por el juez), no de 12 años.
El Tribunal Supremo de Estados Unidos reconoció que existe un derecho a juicio por jurado para todo factor, con excepción de una previa convicción, que incrementa la pena de un crimen por encima del máximo estatutario como en este caso. En aquella ocasión, el sistema utilizado para fijar la pena agravada contra el acusado fue inconstitucional porque restringió su derecho a juicio por jurado, ya que el delito por el que se declaró culpable el acusado (utilizar un arma de fuego con propósitos ilegales) estable *86 cía una pena de 5 a 10 años, la imposición de una pena de 12 años basada en hechos agravantes era inconstitucional. Los hechos que agravaban la pena (el propósito de intimidar) no fueron probados ante un jurado ni admitidos por el acusado. El acusado se declaró culpable (admitió los hechos) por la utilización del arma de forma ilegal y no admitió que tuviera el propósito de intimidar (cuestión que determinó el juez de forma inconstitucional). Para este factor (un hecho) que aumentó la pena por encima del máximo estatutario (10 años) era necesario que el acusado admitiera el hecho o que éste fuera probado ante un jurado más allá de duda razonable.
El razonamiento del Tribunal Supremo federal se basó en la concepción tradicional de la función del jurado en relación con la imposición de la pena. Dicho Tribunal sostuvo que avalar el sistema de imposición de penas impugnado sería contrario a la Constitución de Estados Unidos. Desde entonces, muchos estados han tenido que modificar sus estatutos penales para atemperarlos a la norma esbozada. La norma establecida por el más alto foro federal, lejos de impedir un sistema de agravación de penas, establece los derechos de todo acusado frente a la fijación de una pena agravada.
En Blakely v. Washington, supra, el Tribunal Supremo federal aplicó nuevamente la doctrina de Apprendi al sistema de sentencias de Washington. Blakely secuestró a su esposa. Se declaró culpable por delitos de secuestro, violencia doméstica y armas. El estatuto penal establecía para el delito de secuestro con un arma de fuego una sentencia de 49 a 53 meses de cárcel. El juez, amparado en una disposición legal que permite una sentencia mayor si hay razones sustanciales para ello, condenó a Blakely a cumplir 90 meses de prisión. Como razón sustancial, el juez determinó el hecho de que el acusado actuó con crueldad deliberada. Al igual que Apprendi, se trataba de una pena agravada fundamentada en una determinación de hechos que el acu *87 sado no aceptó ni fue probada ante un jurado más allá de duda razonable. En Blakely, el acusado admitió solamente los hechos que configuraban el delito de secuestro en segundo grado.
El Tribunal Supremo de Estados Unidos decidió que el máximo estatutario es la pena que el juez puede imponer por los hechos reflejados en el veredicto del jurado o admitidos por el acusado. Si la imposición de una pena mayor requiere que se determinen hechos adicionales, esa pena está por encima del máximo estatutario. El Tribunal insistió en que toda determinación de hechos que incremente el máximo estatutario tiene que ser admitida por el acusado o probada ante un jurado más allá de duda razonable. A estos efectos, se expresó:
[T\he relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,” ... and the judge exceeds his proper authority”. (Cita omitida y énfasis suplido.) Blakely v. Washington, supra, págs. 303-304.
Añadió el máximo Tribunal federal:
Whether the judge’s authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury’s verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact. (Énfasis suplido.) Id., pág. 305.
Esta decisión reiteró la norma esbozada en Apprendi: Es necesaria la admisión del acusado o la determinación de un jurado para imponer una pena agravada que se fundamenta en hechos adicionales que agravan la pena. Por lo tanto, para imponer una pena mayor a la establecida para el delito (máximo estatutario) cuando se requiere la determinación *88 de hechos adicionales a los del delito base, no se le puede privar al acusado de su derecho a juicio por jurado.
Ahora bien, existe una excepción cuando el hecho agravante es reincidencia. Esta excepción se fundamenta en que las convicciones previas se establecieron en procedimientos anteriores que garantizaron los derechos del acusado, como lo son el derecho a juico por jurado, la presunción de inocencia y la notificación adecuada. Además, la reincidencia es tradicionalmente un factor utilizado por los tribunales para incrementar la sentencia. Véanse: Apprendi v. New Jersey, supra; Jones v. United States, 526 U.S. 227 (1999); Almendarez-Torres v. United States, 523 U.S. 224 (1998). Aun así, la reincidencia siempre tiene que alegarse en la acusación, por exigencia del debido proceso de ley (Const. E.L.A., Art. II, Sec. 11, L.P.R.A., Tomo 1) y no del derecho a juicio por jurado de la Sexta Enmienda. Véase Pueblo v. Montero Luciano, 169 D.P.R. 360 (2006).
Aplicada la norma de Apprendi al caso de Blakely, el Tribunal Supremo federal concluyó que el sistema de imposición de penas utilizado contra el acusado era inconstitucional. La invalidez de este sistema se debió a que se le permitió al juez determinar por sí solo unos hechos que agravaron la pena por encima de la pena máxima sin agravantes. El acusado admitió un delito que le exponía a una condena de 49 a 53 meses. Como la determinación del hecho agravante (maldad deliberada) no fue admitida por el acusado ni probada más allá de duda razonable frente a un jurado, esta pena agravada de 90 meses no podía sostenerse. Se resolvió de nuevo que debido a que el acusado tiene un derecho a juicio por jurado, los hechos que aumentan una pena sobre el límite establecido en ley tienen que ser admitidos por el acusado o probados más allá de duda razonable.
En United States v. Booker, supra, el Tribunal Supremo de los Estados Unidos tuvo la oportunidad de examinar las *89 guías federales para sentenciar. En este caso se reafirmó la norma de Apprendi para establecer lo siguiente:
Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. United States v. Booker, supra, pág. 244.
Las guías federales para sentenciar se validaron por la interpretación que se les dio. Las guías se declararon constitucionales al disponer que el juez está autorizado a imponer una pena dentro del intervalo fijado para el delito sin tener que hacer una determinación adicional de la existencia de agravantes. Esto es muy distinto al sistema invalidado en Apprendi, donde para imponer una pena mayor a la autorizada, el juez tenía que hacer una determinación de hechos no admitidos por el acusado ni probados ante un jurado.
En Cunningham v. California, supra, el Tribunal Supremo federal examinó las implicaciones de las Enmiendas VI y XIV sobre el sistema de imposición de penas de California. Al amparo de la ley de California, Cunningham podía ser sentenciado a una pena fija de seis, doce o dieciséis años (sentencias determinadas), según las circunstancias agravantes o atenuantes que se probaren. Esta ley [“determinate sentencing law (DSL)”] sustituyó el régimen de sentencias indeterminadas que operó en California por más de 60 años. Según esta nueva ley de imposición de penas, el juez debía imponer a Cunningham una sentencia de 12 años, salvo que determinara uno o más factores agravantes o atenuantes. De determinar atenuantes la pena fija se reducía a seis años de prisión pero de probarse agravantes la pena sería de dieciséis años de cárcel.
Tras una vista posterior al juicio, el juez encontró seis circunstancias agravantes, entre las cuales estaban la vulnerabilidad de la víctima y el serio peligro a la comunidad *90 que mostraba la conducta violenta del acusado. Por esa razón, el juez le impuso a Cunningham una pena agravada de dieciséis años. El Tribunal Supremo federal invalidó este sistema según el razonamiento siguiente:
If the jury’s verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied. (Énfasis suplido.) Cunningham v. California, supra, pág. 290.
Añadió el más alto foro federal:
[0}ur decisions from Apprendi to Booker point to the middle term specified in California’s statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent. (Énfasis suplido.) Id., pág. 293.
Esta jurisprudencia permite a los estados mantener sistemas para determinar sentencias, pero éstos deben estar en armonía con el derecho a juicio por jurado, consagrado en la Constitución federal. Se viola la Sexta’Enmienda en la medida en que se le priva a un acusado el derecho a un juicio por jurado para determinar los hechos que agravan su pena. La determinación de hechos que sostiene una pena agravada tiene que ser adjudicada por el Jurado mediante prueba durante el juicio o en vista separada, a me-nos que la ley le otorgue al juez orna genuina discreción con un margen de penas disponible ante un veredicto de culpabilidad sin necesidad de determinar hechos adicionales. Cunningham v. California, supra, pág. 294.
En estas decisiones, el Tribunal Supremo de Estados Unidos ha establecido claramente la validez de sistemas para sentenciar, siempre que no contravengan el derecho a un juicio por jurado. En Cunningham v. California, supra, pág. 294 esc. 17, se mencionan con aprobación las reformas legislativas de algunos estados para cumplir con las exigencias de Apprendi y su progenie. Al examinar algunas de *91 estas leyes estatales, se pueden apreciar sistemas para determinar sentencias por razón de circunstancias agravantes similares al de Puerto Rico (un sistema de sentencias determinadas que establece un intervalo de tiempo de castigo dentro del cual se selecciona una pena fija). Alaska Stat. Secs. 12.55.125(c) y 12.55.155(f) (2004); Ariz. Rev. Stat. Ann. Sec. 13-702.01 (West Supp. 2006). Ahora bien, estos sistemas tienen que funcionar conforme a la norma federal que requiere, salvo las excepciones antes mencionadas, que los hechos que dan base para la pena agravada sean probados ante un jurado más allá de duda razonable.
No existe problema de inconstitucionalidad en un sistema para imponer sentencias determinadas que durante o después del juicio delega al Jurado la determinación de los hechos que agravan la pena sobre el máximo estatutario; o que permite al juez escoger una pena dentro de un intervalo sin tener que hacer una determinación de hechos agravantes.
III
A. En síntesis, la imposición de una pena agravada por encima del máximo estatutario tiene que basarse en una de las cuatro alternativas reconocidas por la jurisprudencia federal, a saber: (1) que el acusado admita los hechos que agravan la pena; (2) que sea el jurado quien determine esos hechos más allá de duda razonable; (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia, o (4) según la excepción de agravantes por convicción previa. Una vez determinados estos hechos conforme a la Sexta Enmienda, el juez tiene discreción para imponer la pena agravada o para seleccionar la pena dentro del intervalo fijado en ley.
La pena agravada impuesta al Sr. Jaime Santana Vélez violó la cláusula constitucional de juicio por jurado. El peticionario fue acusado por el delito de homicidio involunta *92 rio según el Código Penal de 1974. En su Art. 86 se provee para este delito una pena de reclusión de “un término fijo de un (1) año”. Art. 86 (33 L.P.R.A. sec. 4005). La pena podía ser aumentada o disminuida de mediar circunstancias agravantes o atenuantes. Id. De mediar circunstancias agravantes, la pena podía ser aumentada a tres años.(4) Así pues, una convicción por el delito de homicidio involuntario sin más, autoriza al juez sólo a imponer una pena de un año, no más. La imposición de una pena mayor entre año y un día, y tres años, depende de una determinación ulterior, a saber, los hechos agravantes.
Al igual que el Art. 74 del Código Penal de 2004 (33 L.P.R.A. see. 4702), el Art. 58 del Código Penal de 1974 (33 L.P.R.A. see. 3282) permitía al juez imponer una pena mayor en los casos en que se determinaren circunstancias agravantes. Esta adjudicación de hechos era mandatoria para imponer la pena mayor por agravantes y no constituía una mera guía discrecional. El juez no contaba con un intervalo dentro del cual seleccionar la pena. Las disposiciones mencionadas no le otorgaron al juez la facultad para seleccionar la pena agravada dentro del intervalo provisto sino que era necesaria la determinación de otros hechos. Tanto es así, que para sostener la pena agravada contra el señor Santana Vélez en este caso, el Tribunal de Apelaciones tuvo que determinar que el acusado intervino indebidamente con un testigo y que conducía con negligencia crasa. Estos hechos aumentaron la pena por encima del máximo estatutario de un año.
Debido a que para la pena que le fue impuesta al acusado (3 años) era necesaria la determinación de hechos *93 agravantes, esto se debió hacer por medio de alguna de las formas antes indicadas. Para imponer una pena mayor a la fija establecida por ley, era necesario determinar algunos de los hechos descritos en la Regla 171 de Procedimiento Criminal, supra (antes de ser enmendada para atemperarla al Código Penal de 2004).(5) En ausencia de esta determinación adicional de hechos, el juez tenía que imponer la pena fija de un año.(6) No tenía discreción para seleccionar una pena dentro del intervalo de seis meses y tres años, en ausencia de una determinación de hechos agravantes o atenuantes. En ese sentido, el caso es indistinguible de Cunningham v. California, supra.
Para dictar una sentencia agravada al amparo de la Regla 171 de Procedimiento Criminal, supra, es necesario hacer una adjudicación de hechos. Esto es, hay que determinar si algún hecho enumerado por la regla se encuentra *94 presente. Como esta determinación de hechos expone al acusado a una pena mayor, es imprescindible cumplir con las exigencias del derecho a juicio por jurado. La adjudicación de los hechos que agravaron la pena impuesta al acusado por parte del Tribunal de Apelaciones y sin el peso de prueba requerido, violó su derecho según la Sexta Enmienda.
Para efectos de esa disposición constitucional el máximo estatutario para el delito de homicidio involuntario en este recurso es un año de reclusión (pena fija en triadas). En Apprendi era de 10 años (la pena mayor dentro del intervalo de 5 a 10 años) y en Cunningham era de 12 años (pena fija antes de imponer agravantes). Por otro lado, la ley de Washington analizada en Blakely v. Washington, supra, establecía un término máximo estatutario para cada delito. Wash.Rev.Code Ann., Sec. 9.94A.320.
En ese estado, para exceder el margen del término provisto (una pena por encima del intervalo), el juez debía hacer una determinación de hechos con un quantum de prueba establecido por ley (“substantial and compelling reasons justifying an exceptional sentence”). Wash.Rev.Code Ann. Sec. 9.94A.120. En otra disposición se establecían los factores agravantes que ilustraban al juez. Wash.Rev. Code Ann. Sec. 9.94A.390. Estas disposiciones, al igual que en Puerto Rico, establecen el término a ser impuesto por la comisión de un delito y el proceso para determinar una pena agravada.
En fin, de lo anterior se desprende que no existe diferencia entre el sistema de triadas revisado en Cunningham v. California, supra, el de márgenes revisado en Blakely v. Washington, supra, y el nuestro, en cuanto a la Sexta Enmienda se refiere. El estatuto de California establecía una pena fija para las sentencias agravadas o atenuadas. En Washington se establecía un margen de penas sin agravantes. Blakely v. Washington, supra. Pero al igual que *95 en Puerto Rico, se exige que para imponer la pena agravada se determine el hecho adicional que lo justifica.
Estos sistemas requieren la presentación de prueba y una determinación sobre los hechos que incrementan la pena establecida para el delito imputado. Por exigencia de la Sexta Enmienda, esos hechos tienen que ser determinados por un jurado más allá de duda razonable o admitidos por el acusado. Por supuesto, este derecho constitucional se tiene que reconocer de igual forma al imponer una pena agravada al amparo de las disposiciones análogas del Código Penal de 2004. Arts. 70-74 (33 L.P.R.A. secs. 4698-4702).
La pena agravada impuesta al peticionario no satisfizo las exigencias constitucionales, pues el jurado no determinó las circunstancias agravantes más allá de duda razonable ni el acusado admitió los hechos que agravan la pena. Debido a que no se dio ninguna de las excepciones señaladas para imponer una pena agravada, era necesario que el jurado determinara los hechos agravantes más allá de duda razonable. De lo anterior se desprende que en algunas instancias se puede imponer una pena agravada como la impugnada sin la participación del jurado. Esto es permisible cuando: (1) el acusado admite los hechos que agravan la pena; (2) el acusado consiente a que el juez determine esos hechos únicamente para propósitos de sentencia, o (3) cuando el agravante consiste en la reincidencia.
Los Arts. 58 y 86 del Código Penal de 1974, supra, así como las Reglas 162.4 y 171 de Procedimiento Criminal, supra, no impiden la aplicación de un sistema constitucional para determinar una sentencia agravada. Estas disposiciones permiten a un acusado: (1) admitir los hechos que agravarían su pena; (2) que sea un jurado quien determine más allá de duda razonable estos hechos agravantes, o (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia.
*96 El problema que este recurso en particular presenta frente a la Sexta Enmienda tiene que ver con el proceso seguido para agravar la pena y no con las disposiciones legales señaladas. Las disposiciones legales aquí impugnadas son constitucionales, pues permiten la imposición de penas agravadas conforme a la Sexta Enmienda. La violación de la Sexta Enmienda surgió al aplicar la ley y no tiene que ver con el contenido de esta última. El ordenamiento jurídico penal en controversia es válido. Al determinar los hechos que agravaron la pena, el Tribunal de Apelaciones aplicó inconstitucionalmente las disposiciones aludidas.(7)
B. En el futuro, cuando sea necesaria la adjudicación de los hechos agravantes por parte del jurado, y como medida profiláctica, el juez debe tener la discreción para decidir en qué etapa procesal se presenta la evidencia a estos fines. Esta norma es la más adecuada en ausencia de legislación sobre el particular. La jurisprudencia federal per-mite presentar dicha evidencia durante el juicio o, posterior al veredicto. La razón es sencilla: no complicar los procesos en aquellos casos en que ello no se amerita.
Con los criterios establecidos en la Regla 19 de Evidencia, 32 L.RR.A. Ap. IV, o en la Regla 403 de las nuevas Reglas de Evidencia, vigentes a partir del 1 de enero de 2010, el juez puede decidir cuándo la prueba a ser presentada al jurado antes de un veredicto puede afectar adversamente los derechos del acusado y cuándo no. Le corresponde al juez que preside el proceso hacer un análisis de las medidas necesarias para salvaguardar la justicia en los casos específicos.
*97 Cabe señalar que mucha de la prueba que sustenta un agravante es admisible en evidencia y es presentada durante el juicio. Por ejemplo, cuando el agravante es la edad de la víctima es casi inevitable que se presente ese factor al jurado durante el juicio. En casos así, ordenar la bifurcación de los procedimientos de forma automática llevaría a la presentación de prueba acumulativa. Por eso, según este mismo análisis, otras jurisdicciones han reconocido la idoneidad de una regla orientada a que el juez tenga discreción para decidir si los agravantes se someterán al jurado durante el juicio o en una vista evidenciaría luego de recaer el veredicto de culpabilidad. Véanse: Alaska Stat. Sec. 12.55.155(f) (2004) Kan. Stat. Ann. Sec. 21-4718(b)(2) (2005); Minn. Stat. Sec. 244.10, subd. 5 (2005); N.C. Gen. Stat. Ann. Sec. 15-A-1340.16(al) (2005); Wash. Rev. Code Sec. 9.94A.537 (2006).
Por último, conviene aclarar el alcance de nuestra decisión a otros procesos judiciales. La norma que hoy establecemos, conforme a lo resuelto por el Tribunal Supremo federal en United States v. Booker, supra, pág. 268, es de aplicación retroactiva a toda determinación judicial pendiente de revisión, o que no sea final y firme. En este caso, citando a Griffith v. Kentucky, 479 U.S. 314, 328 (1987), el Tribunal Supremo de Estados Unidos reiteró que “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final”. Esto quiere decir que cuando se pauta una nueva norma constitucional sobre el procedimiento criminal su aplicación a casos existentes es limitada. Estas exigencias podrían ser invocadas únicamente en casos aún no resueltos o en los que todavía está disponible el mecanismo de revisión directa, porque no son finales y firmes. Pueblo v. González Cardona, 153 D.P.R. 765, 772 (2001).
Así pues, procede la devolución del caso al foro primario para resentenciar al peticionario conforme al criterio aquí *98 expuesto. Si el Ministerio Público lo solicita, debe celebrarse una vista para establecer las circunstancias agravantes ante un jurado. La disolución del jurado que encontró al acusado culpable por el delito de homicidio involuntario no es impedimento para constituir otro Jurado que juzgue los agravantes. Ante hechos similares, igual remedio ordenó el Tribunal Supremo de Indiana en Smylie v. State of Indiana, supra.
Corresponde al fiscal evaluar este caso y decidir, en el sano ejercicio de su discreción, si puede probar los hechos agravantes ante un jurado, más allá de duda razonable. Ahora bien, el exceso de velocidad constituye la negligencia que ya es elemento esencial del delito de homicidio voluntario. Por lo tanto, ese factor no puede considerarse como circunstancia agravante. En eso también erró el Tribunal de Apelaciones.
Tampoco se puede descartar el segundo factor agravante que identificó el Tribunal de Apelaciones: las llamadas telefónicas del peticionario para alegadamente inducir a una testigo de cargo a cometer perjurio. En todo caso, correspondería al Jurado adjudicar el motivo de esas llamadas y determinar si las considera hechos agravantes de la pena impuesta. Al abrogarse esa función, el Tribunal de Apelaciones incidió.
En cambio, podría invocarse como agravante en este caso la edad de la víctima, una persona de 83 años de edad. El texto de la Regla 171(b)(l)(0) de Procedimiento Criminal, supra,, es claro: se considera agravante que la víctima tenga 60 años de edad o más. Este subinciso se añadió a la regla mediante la Ley Núm. 142 de 18 de julio de 1998. Es correcto que el propósito del legislador fue castigar con una pena mayor a aquellos que se aprovechan de la edad mayor de la víctima. Pero no es menos cierto, en primer lugar, que cuando la letra de la ley es clara, no podemos negamos a seguirla tan sólo porque entendamos que la aplicación contemplada no fue la intención de la Asamblea Legislativa. *99 Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; Alejandro Rivera v. E.L.A., 140 D.P.R. 538 (1996).
En segundo lugar, la Exposición de Motivos de la Ley Núm. 142 no descarta la aplicación de la Regla 171(b)(l)(0) a la situación que nos ocupa. La Asamblea Legislativa expresó un deseo de darle protección legal especial a las personas mayores de 60 años porque “nuestra sociedad ha perdido la noción de la importancia de considerar, respetar y velar por el bienestar de las personas de edad avanzada”. Exposición de Motivos de la Ley Núm. 142 (1998 (Parte 1) Leyes de Puerto Rico 587). Para el legislador, este grupo poblacional “no [cuenta con] la fortaleza física y los recursos necesarios para defenderse” de delitos variados. Id. Aunque el legislador no mencionó el homicidio involuntario al enumerar ciertos delitos en la Exposición de Motivos, es claro que la lista no fue exhaustiva, pues se refiere a los delitos enumerados, “entre otros”. Id. Más aún, la Exposición de Motivos no distinguió entre delitos de negligencia o intención específica, sino que hizo claro lo que surge del texto de la ley: “Existe consenso en que cualquier tipo de delito que se cometa contra una persona de edad avanzada debe constituir una circunstancia agravante.” (Énfasis suplido.) íd. Así pues, no se puede descartar la aplicación de ese agravante a este caso.
IV
En conclusión, este Tribunal resuelve hoy que la norma de Apprendi y su progenie aplica a los procedimientos penales en los tribunales de Puerto Rico. Por consiguiente, por imperativo de la Sexta Enmienda de la Constitución federal, para imponer una pena agravada, por encima de la pena máxima estatutaria establecida para el delito imputado, tiene que concurrir alguna de las siguientes circunstancias: (1) que el acusado admita los hechos que agravan *100 la pena; (2) que sea el jurado quien determine esos hechos más allá de duda razonable; (3) que el acusado consienta a que el juez determine esos hechos únicamente para propósitos de sentencia, o por excepción, (4) que el agravante se trate de una convicción previa. El texto de la Regla 171 de Procedimiento Criminal, supra, es enteramente compatible con estas alternativas. El problema de inconstitucionalidad en. este caso surge en la aplicación de la regla al determinarse los agravantes sin la intervención de un jurado ni la anuencia del acusado, y por mera preponderancia de prueba.
Devuelto el caso al Tribunal de Primera Instancia, corresponderá al Ministerio Público decidir, en el ejercicio de su discreción, si interesa probar los hechos agravantes, más allá de duda razonable y ante un jurado insaculado para ese propósito, o si se allana a que se sentencie al señor Santana Vélez a la pena fija de un año que el Art. 86 del Código Penal de 1974, supra, establecía para el delito de homicidio involuntario, cuando se cometieron los hechos.

 A pesar de lo resuelto en Balzac v. Porto Rico, 258 U.S. 298 (1922), el Profesor Álvarez González explica que “[d]esde que Duncan v. Louisiana, 391 U.S. 145 (1968), resolvió que [el derecho ajuicio por jurado] es ‘fundamental’y, como tal, aplicable a los estados ... parece razonable concluir que ese derecho es aplicable a Puerto Rico bajo la doctrina de incorporación territorial”. J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Editorial Temis, 2009, pág. 428, citando a D.M. Helfeld, Plow Much of the United States Constitution and Statutes Are Applicable to the Commonwealth of Puerto Rico, 110 F.R.D. 452, 458 (1986), y J.J. Álvarez González, La protección de los derechos humanos en Puerto Rico, 57 (Núms. 1-2) Rev. Jur. U.P.R. 133, 150 (1988).

 Véanse: Jones v. United States, 526 U.S. 227 (1999); Almendarez-Torres v. United States, 523 U.S. 224 (1998); McMillan v. Pennsylvania, 477 U.S. 79 (1986). En estos casos pre-Apprendi el Tribunal intentaba diferenciar si el hecho agravante de la pena se trataba de elementos del delito (“elements of the offense”) los que tenían que ir a un jurado o de factores agravantes (“sentencing factors”) que, originalmente, no tenían que ir a un jurado. Para un resumen adecuado de los casos antes citados y su final desenlace en Apprendi v. New Jersey, véase 6 La Fave, Israel, King & Kerr, Criminal Procedure, Sec. 26.4(i) págs. 787-793 (2007).

 En cuanto al estándar de razonabilidad (“reasonableness”) y su aplicación por los Tribunales de Circuito federales, véase Rita v. United States, 551 U.S. 338 (2007).

 A pesar de que el delito de homicidio involuntario es clasificado como menos grave, le es aplicable el Artículo 58 por la pena ser de delito grave. En este sentido, dicho delito es distinto a los demás delitos menos graves estatuidos en el Código para los cuales, luego de las enmiendas de 1980, la pena continuó siendo una pena de reclusión no mayor de seis meses, o multa no mayor de quinientos dólares. La pena del delito de homicidio involuntario fue enmendada para atemperarla a la Ley de Sentencias Determinadas y por esto el delito de homicidio'involuntario tiene una pena fija, al igual que todos los delitos graves. Véase las Enmiendas Concordantes de la Ley de Sentencia Determinada, Ley Núm. 101 de 4 de junio de 1980 (1980 Leyes de Puerto Rico 298).

 Esta norma no aplica a la imposición de penas en grado de reincidencia. La reincidencia siempre debe ser alegada en la acusación, excepto que sea aceptada por el acusado, pero como exigencia del debido proceso de ley, no porque el derecho a juicio por jurado de la Enmienda Sexta así lo requiera. En ese sentido, véase Pueblo v. Montero Luciano, 169 D.P.R. 360 (2006).

 Aun cuando no estamos ante un caso que se haya ventilado al amparo de las disposiciones del Código Penal de 2004, los principios constitucionales esbozados por el Tribunal Supremo de Estados Unidos, reconocidos en esta opinión, son igualmente aplicables a las disposiciones de dicho Código.

 En estos casos, el juez que presida los procedimientos deberá emitir una instrucción al jurado a los efectos de que deberán, en primera instancia, determinar si el acusado es culpable o no culpable. Luego, de llegar a un veredicto de culpabilidad, deberán considerar si, a base de la prueba presentada para probar la comisión del delito, se probaron más allá de duda razonable los agravantes imputados. Del jurado contestar en la afirmativa, el juez deberá tomar en consideración dicha determinación al momento de imponer sentencia.

 No existe exigencia constitucional de que los atenuantes sean dirimidos por un jurado, pues la determinación de un atenuante por parte del juez no expone al acusado a una privación mayor de libertad que la determinación de culpabilidad original rendida por el Jurado. En Apprendi v. New Jersey, 530 U.S. 466, 491 esc. 16 (2000), el Tribunal Supremo federal lo expresó de la manera siguiente: “[i]f facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the Judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.”

 No existe problema de doble exposición con la celebración de un proceso de resentencia frente a otro jurado. En dicho proceso no se juzgará nuevamente a la persona, pues ya un jurado la declaró culpable, sino que se corregirá una sentencia inconstitucional. Igual, consideramos que cualquier reclamo de doble exposición que pueda levantar el acusado, se entiende renunciado por éste al solicitar la revisión de la sentencia. Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Editorial Forum, 1993, Vol. II, Sec. 16.3, págs. 395-408. A manera persuasiva, véase Smylie v. State, 823 N.E.2d 679 (Ind. 2005), en el cual se siguió idéntico procedimiento.

 Sin embargo, en dicha resolución, el Congreso de Estados Unidos no aprobó la Sec. 20 del Art. II. Además, condicionó la vigencia de la See. 5 del Art. II y la Seo. 3 del Art. VII a que se adoptara mediante enmiendas un texto en específico. Dichas enmiendas no se adoptaron mediante referendo como el resto de la Constitución, sino mediante la Resolución Núm. 34 de la Convención Constituyente, de 10 de julio de 1952, es decir, quince días antes de la vigencia de la carta magna.

 La situación de Puerto Rico ya no es única. Con posterioridad al caso de Puerto Rico, otras áreas insulares de Estados Unidos siguieron el ejemplo de Puerto Rico y redactaron sus propias constituciones, para regir sus asuntos internos. Así, la Samoa Americana adoptó una Constitución redactada localmente, que el Secretario del Interior aprobó en 1960. El Congreso no intervino, ya que nunca aprobó una ley orgánica para ese territorio y dejó su organización en manos de la Rama Ejecutiva del Gobierno federal. 48 U.S.C.A. sec. 1661(c). No obstante, la Ley Núm. 213 de 8 de diciembre de 1983 (48 U.S.C.A. sec. 1662a), estableció que cualquier enmienda o modificación a la Constitución de la Samoa Americana podrá hacerse solamente mediante ley del Congreso de Estados Unidos.
Por otra parte, las Islas Marianas del Norte aprobaron una Constitución local en 1978 por acuerdo (covenant) con el Gobierno federal. Conforme a dicho acuerdo político, se declaró que dicho territorio es un “self-governing commonwealth ...in political union with and under the sovereignty of the United States of America”. (Enfasis suplido.) Marianas Covenant, Sec. 101.

 “See. 2. [Privilegios e inmunidades]
“Los derechos, privilegios e inmunidades de los ciudadanos de los Estados Uni-dos se respetarán en Puerto Rico hasta el mismo grado que si Puerto Rico fuera un Estado de la Unión y sujeto a las disposiciones del inciso 1 de la See. 2 del Art. IV de la Constitución de los Estados Unidos.” L.P.R.A., Tomo 1, ed. 2008, pág. 60.

 “Homicidio Involuntario
“Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término fijo de un (1) año. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un día”. 33 L.P.R.A. see. 4005.

 “Regla 171. Sentencia; Prueba sobre circunstancias atenuantes o agravantes
“El tribunal, a propia instancia o a instancia del acusado o del fiscal, con notificación a las partes o la parte contraria, podrá oír, en el más breve plazo posible, prueba de circunstancias atenuantes o agravantes a los fines de la imposición de la pena.
“(b) Se podrán considerar como circunstancias agravantes, entre otras, las siguientes:
“(1) Hechos relacionados con la comisión del delito y con la persona del acusado incluyendo entre otros:
“(A) El delito fue de violencia, se causó grave daño corporal, o amenaza de causarlo y se evidenciaron hechos que revelan una gran crueldad, ningún respeto humano y un rechazo a las normas de la decencia.
“(G) El acusado amenazó a los testigos, ilegalmente evitó que los testigos asistieran a las vistas o los indujo a cometer perjurio o en cualquier otro modo obstaculizó el proceso judicial.
“(O) La víctima del delito es una persona de sesenta (60) años de edad o más. ...” 34 L.P.R.A. Ap. II.

 “Sentencia Determinada
“Cuando el tribunal condenare a pena de reclusión dictará una sentencia determinada que tendrá término específico de duración. En los casos de delito grave se impondrá el término fijo establecido por ley para el delito. De existir circunstancias agravantes o atenuantes, deberá aumentar o disminuir la pena fija dentro de los límites establecidos en la ley para el delito. En estos casos el término de reclusión a imponerse también será fijo.” Art. 58 del Código Penal de 1974 (33 L.P.R.A. see. 3282).

 Del mismo modo, en varios estados se ha sostenido la validez de sus estatutos al amparo de la norma federal, aunque se ha delimitado su aplicabilidad en conformidad con la Sexta Enmienda y la jurisprudencia federal. Véanse: López v. People, 113 P.3d 713 (Colo. 2005); Smylie v. State, 823 N.E.2d 679 (Ind. 2005); State of Washington v. Hughes, 110 P.3d 192 (Wash. 2005); State v. Dilts, 103 P.3d 95 (Or. 2004).